Bailey, Sp. J.,
delivered the opinion of the court.
. The complainant seeks relief against a judgment at law,, recovered on a note signed by him as surety, apon the ground that he verbally notified the holder to sue the principal debtor and collect the money; that the creditor failed to bring suit until after the death and insolvency of the principal, whereby the complainant has been, or probably has been, damnified. We think the notice to the holder to sue has been satisfactorily established, and the complainant would be entitled to the relief sought but for the fact that it does not appear that he has suffered any loss by the failure of the creditor to bring suit.
It appears that all parties lived in Wilson county; thac sometime in the month of January, 1866, the notice was given; that the first term of the circuit court held after the notice was given, began the second Monday in May, and the next thereafter the second Monday in September. The creditor applied to the principal debtor for payment, *555 collected part of the money, and payment of the remainder was promised to be made as soon as the debtor’s crop of cotton should mature, but before the crop was matured, the debtor died, and although his credit had been good to the time of his death, and he owned property exceeding-in value the amount of the particular debt, his estate proved to be insolvent.
From this statement it is seen that if an action had been brought to the May term of the circuit court, judgment could not have been recovered earlier than September, if the defendant had chosen to put in a dilatory plea to the action, and in view of the embarrassed condition of his affairs, and the well known, and indeed, universal habit of our people, we cannot doubt that such a plea would have been filed. At all events, according to the established course of practice in our courts, the creditors could not have forced the suit to judgment before September. After the death of the debtor, the creditor could not have acquired any lien upon or right to priority of satisfaction out of the estate, for the reason that the estate was insolvent.
It is argued that if the creditor had urged the debtor to pay the money, he would have paid it, and that it is probable that some loss has befallen the surety because of the failure to urge payment and bring suit.
The remedies given by the statute laws of the state, and afforded by the practice of the court of chancery, to a surety who believes himself to be in danger from the apprehended insolvency of his principal, are so complete and effective that we do not feel inclined to extend the doctrine of equitable relief founded on a verbal notice to the creditor to sue, further than it has been carried in the cases of Hancock v. Bryant, 2 Yer., 476, and Thompson v. Watson, 10 Yer., 362. In the language of Judge Keese, 6 Hum., 440, “the principle of these cases goes to the verge of the law.”
It is true, in announcing the opinion of the court in *556 the first of these cases, Judge Peck says: “That one of the grounds on which relief is given to the surety is, ‘a probability that if suit had been brought the money might have been made;’ ” and that Judge Keese, in [Burrow v. Bank] 6 Hum., 440, seems to approve the doctrine laid down by Judge Peck. But it will be seen by looking to the judgment of the court in each case it appeared that the money could have been collected if suit had been brought after notice, and that the surety was actually injured by the delay.
These dicta of Judges Peck and Keese are opposed by a dictum of Chief Justice Nicholson, who, in delivering the opinion of the court in the case of Hopkins v. Spurlock, 2 Heis., 152, says: “That to make the discharge effective it must not only appear that the holder of the note failed to sue, but that the money could have been made by reasonable diligence.”
The rule as stated by Chief Justice Nicholson is correct ■ in principle, and in conformity to the equitable rule as to the duties of a creditor in respect to collateral securities that he holds for the payment of a debt.
The surety has an interest in such securities, and may demand them upon a payment of the money. The creditor holds them as his trustee, and is bound to use reasonable diligence in their prosecution and collection. If he fails in this duty, and thereby the surety is injured, the latter is exonerated to the extent of his actual loss. But as a necessary condition to equitable relief he must show not a probability of loss, but an actual loss. To apply a different rule to a case like the one under consideration, or to require the creditor to use argument, persuasion, and entreaty in urging the principal debtor to> pay the money, would be unjust to the creditor and dangerous in the extreme. Instead of a rule that is reasonable, easy of comprehension, and founded in natural justice, we would in *557 troduce into such cases the most uncertain elements, and leave the rights of parties to be determined by doubtful speculations.
The decree of the chancellor will be reversed.